IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIO D. MARIN
and REYES MARIN,

        Plaintiffs,
  vs.                                    CIVIL NO.  12-448 WJ/LFG

GARY KING, Attorney General
of New Mexico, individually; STEVEN
SUTTLE, Asst. Attorney General, individually;
HEATHER FERGUSON GREENHOOD; MAX
SALAS, Criminal Agent, NM Dept. of Public
Safety/NM State Police, individually; BRICE
CURRENT, Lieutenant, San Juan County
Sheriff's Office, individually; SAN JUAN
COUNTY New Mexico, acting through the
San Juan County Sheriff's Office; and
PATRICIA FEESER NORRIS, D.V.M.,

        Defendants.

## ORDER  GRANTING PLAINTIFFS' SECOND RULE 56(d)
## MOTION FOR ADDITIONAL DISCOVERY

THIS MATTER is before the Court on Plaintiffs Mario D. Marin and Reyes Marin's renewed Second Rule 56(D) Motion for Additional Discovery [Doc. 31], which was filed "out of caution" for additional discovery.  Defendant Steven Suttle filed a Response [Doc. 34]; and Plaintiffs filed their Reply [Doc. 39].  Oral argument is not necessary.

Plaintiffs allege that Defendant Steven Suttle ("Suttle") personally participated in the alleged violation of Plaintiffs' constitutional rights because he exercised control and direction over the lead coordinator of the Attorney General Task Force, Heather Ferguson Greenhood.  The Task Force is alleged to have raided Plaintiffs' property in April 2009.  Plaintiffs further contend that Suttle failed to supervise Ms. Greenwood's actions, and that he acquiesced in the Task Force's alleged unlawful

raids, including the raid on Plaintiffs' property. Plaintiffs contended that Suttle was responsible for the operation of the Task Force's policy of engaging in raids on private ranches.

Suttle asserts qualified immunity and, as part of his motion [Doc. 17], filed a Declaration stating that he "never had knowledge of Ms. Ferguson's alleged conduct in the 'numerous raids' referred to in Paragraph 17 of the Complaint, or in the alleged raid of Plaintiffs' [Mr. Marin's] property." [Doc. 17-1,¶ 7; Uncontroverted Material Facts No. 7]. Further, Suttle's Declaration states that he "never had knowledge that Ms. Ferguson directed the killing of animals or crushing of eggs in any fashion . . . ." [Id.]

The Court earlier allowed limited discovery as authorized in Maxey ex rel. Maxey v. Fulton, 890 F.2d 279, 282-83 (10th Cir. 1989). [Doc. 25]. That discovery was completed, and included Suttle's deposition. Suttle's sworn deposition testimony now raises questions concerning the accuracy of his earlier Declaration, made under penalty of perjury. For example, in his deposition, he was asked:

> Q: Do you recall Heather Ferguson, as a member of the task force, attending cockfighting raids in New Mexico for years the 2008 and 2009?
>
> A: Yes. She certainly did go out on these raids, yes, but I don't know exactly about the dates you mentioned. One I know of for sure was the first one in Chaparral.
>
> * * *
>
> Q: Do you recall there being a raid in Dona Ana County in 2008 where members of the task force were also present?
>
> A: I know–well, I vaguely recall there was a raid in Dona Ana County.
>
> * * *

Q: So at this point in time in 2008, you had been informed that during the raids--the cockfighting raids that were going on during that time included euthanization of poultry?

A: It certainly was discussed, yes.

* * *

Q: There were also instances during those raids in 2008, 2009 where roosters were euthanized?

A: Absolutely.

Q: And you knew that at the time that you were Special Counsel at the Attorney General's Office?

A: I did.

* * *

Q: Do you recall her [Defendant Ferguson] telling you about the euthanization of poultry during the raids?

A: I sure do. But that was at meetings.

Q: Do you recall receiving information that it was [Defendant] Patricia Feeser, as the veterinarian on site, who participated in the euthanization of poultry during those raids?

A: I believe at least one I knew that had happened, yes.

* * *

Q: Is it true that the task force, or at least the people who are listed here in this email as members of the task force, were debriefed about raids that occurred during that time frame?

A: Sure

* * *

Q: And you were at those meetings.

A: I was probably at most of them . . .

[Doc. 31, at 11-12 n. 24; Doc. 39, at 4-6].

The foregoing deposition testimony conflicts with Suttle's earlier Declaration concerning whether he knew of raids and Ferguson's conduct during the raids and whether Suttle was informed by Ferguson or other members of the Task force concerning the loss of poultry and eggs.

Plaintiffs also refer to a May 5, 2009 report from Ferguson to Suttle concerning the raid on Plaintiffs' property. [Doc. 31, at 13-14]. The report discloses that poultry was seized and euthanized, and that hundreds of eggs were also seized. This report conflicts with Suttle's Declaration that he lacked knowledge of Ferguson's conduct and did not know that animals were being killed or that eggs were being seized.

Finally, in his Declaration, Suttle claims that he "never stated or knowingly implied" that the Attorney General's office would lead in the enforcement of New Mexico's animal cruelty laws. [Doc. 17-1, ¶ 3]. However, at his deposition, he was asked whether he identified himself as head of the Task Force.

> Q: Do you recall, you, yourself, introducing yourself as the head of the task force?
>
> A. I may have said that, yes.
>
> * * *
>
> Q: He states when he asked you if you were a member of the task force, that you responded that you were the head of the task force.
>
> A: I probably did say that.
>
> * * *
>
> Q: And during that conversation, do you recall telling Ms. Tellier that you were the head of the task force for the Attorney General's Office?
>
> A: Again, I probably did, yes.

4

[Doc. 31, at 16 n. 27; Doc. 39, at 7-8].

The conflicts between Suttle's Declaration and his deposition testimony likely require additional discovery to assist the Court in determining whether the qualified immunity defense is appropriately asserted in this case.

Accordingly, the Court will grant Plaintiffs' request and authorizes an additional deposition of any one deponent, other than the Attorney General. The deponent should be best suited to provide evidence regarding the extent of Suttle's knowledge of Ferguson's activities relating to raids on private property; Suttle's knowledge concerning the conduct of the Task Force while conducting raids; and whether the extent of information provided to Suttle concerning seizure and/or euthanization of poultry, as well as seizure and/or destruction of eggs.

Plaintiffs may select one deponent of their choice and have his/her deposition taken. The deposition is not to exceed two hours in length, and will be limited to the topics listed above. Plaintiffs' counsel may also properly examine into conflicts between Suttle's Declaration and his deposition testimony.

The Court will allow Plaintiffs 30 days from date of this Order to take the deposition, and an additional 20 days from completion of the deposition, no later than March 15, 2013, to file a supplementary response to the Motion for Summary Judgment.[1]

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[1] The additional twenty days is measured from completion of the deposition, not from receipt of the deposition transcript.