IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIO D. MARIN and REYES MARIN,

    Plaintiffs,

vs.                                              Civ. No. 12-448 KG/KK

GARY KING, ATTORNEY GENERAL OF NEW MEXICO,
individually, HEATHER FERGUSON GREENHOOD,
PATRICIA FEESER NORRIS, D.V.M.,
and MAX SALAS, CRIMINAL AGENT, NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY/NEW MEXICO STATE POLICE,
individually,

    Defendants.

MEMORANDUM OPINION AND ORDER

    This matter comes before the Court upon Defendant Gary King's Motion for Summary Judgment (Motion for Summary Judgment), filed on May 9, 2013. (Doc. 58). Defendant Attorney General Gary King brings the Motion for Summary Judgment on the basis of qualified immunity. Plaintiffs responded on August 16, 2013, opposing the Motion for Summary Judgment and seeking permission to conduct additional discovery on King's factual assertions. (Doc. 87). King replied on September 17, 2013. (Doc. 91). Having considered the Motion for Summary Judgment, the accompanying briefs, and the attached and referenced exhibits, the Court denies Plaintiffs' request to conduct additional discovery and grants the Motion for Summary Judgment.

*A. Plaintiffs' Request for Additional Discovery*

    Plaintiffs continue to ask for permission to conduct additional discovery pertinent to the Motion for Summary Judgment even though the Magistrate Judge has ruled twice on the issue of discovery. First, on May 28, 2013, the Magistrate Judge stayed all discovery pending the

resolution of the Motion for Summary Judgment. (Doc. 66). Then, on July 3, 2013, the Magistrate Judge, in a well-reasoned opinion, denied Plaintiffs' Fed. R. Civ. P. 56(d) request to conduct discovery relevant to the Motion for Summary Judgment. (Doc. 79).

Plaintiffs' latest request to conduct discovery is deficient for several reasons. First, Plaintiffs raise their request in a response brief when the proper procedure is to file a separate motion subject to the Federal Rules of Civil Procedure governing motion practice. Second, Plaintiffs' request is, in fact, a Rule 56(d) request, but Plaintiffs fail to provide an affidavit or the specificity necessary to support a Rule 56(d) request. Third, Plaintiffs do not provide any compelling reason for overturning the Magistrate Judge's orders staying discovery and denying Plaintiffs' Rule 56(d) motion. The Court, therefore, denies Plaintiffs' request to conduct additional discovery.

B. *Summary of Material Facts Viewed in the Light Most Favorable to Plaintiffs[1]*

This is a 42 U.S.C. § 1983 civil rights case arising from the April 2009 search of Plaintiffs' ranch and the seizure and subsequent destruction of hundreds of roosters, hens, chicks, and eggs. In 2007, King convened the Attorney General's Animal Cruelty Task Force (Task Force) "to engage in lobbying and other efforts aimed at the generation of new animal cruelty laws" and "to facilitate information sharing between state and local law enforcement agencies regarding the implementation of new and existing animal cruelty laws."[2] (Doc. 58-1) at ¶3. The purpose of the Task Force also included supporting the enforcement of animal fighting laws.

---

[1] Unless otherwise noted, these facts are taken from the Court's previous Memorandum Opinions and Orders granting Defendant Steven Suttle's Motion for Summary Judgment and denying Plaintiffs' motion to reconsider the decision to grant Suttle's Motion for Summary Judgment. (Docs. 50 and 75).

[2] The Attorney General's Office also lent its name to the Task Force's anti-cruelty hotline, which a private entity operated. (Doc. 67-2) at 14.

(Doc. 87-2).  The Task Force, however, "did not have any independent authority to conduct any law enforcement activities."  (Doc. 58-1) at ¶ 5.

Although the Task Force had no formal membership or formal titles, Suttle, an Assistant Attorney General, was known as the head of the task force while Defendant Heather Ferguson Greenhood (Ferguson) was known as the Task Force's coordinator.  (Doc. 58-1) at ¶ 4.  Ferguson had no law enforcement training and was not an employee of the Attorney General's Office.  (Doc. 58-1) at ¶ 7; (Doc. 87-8) at 2-3.  King chaired the Task Force.  (Doc. 87-2).

During 2008 and 2009, Ferguson; Defendant Patricia Feeser Norris, D.V.M. (Feeser); and law enforcement officials went onto several properties to search for signs of illegal animal fighting, and seized animals that appeared to be involved in those activities.  On occasion, officials euthanized those animals.  In addition, there is evidence that describes (1) Ferguson as "serving" search warrants, (2) the Task Force as conducting "raids," (3) law enforcement officials expressing gratitude for the Task Force's assistance on raids, (4) animal cruelty cases as being prosecuted or investigated by the Task Force, and (5) the Attorney General Office's approval of the creation of a logo on a patch to identify Task Force members attending raids.  In December 2009, after the raid occurred at Plaintiffs' ranch, the Attorney General's Office received a complaint that Ferguson raided a property in Texas while representing herself as an agent of the Attorney General's Office.  (Doc. 87-6).

On April 29, 2009, Ferguson, Feeser, Defendant Max Salas (a New Mexico State Police criminal agent), and former Defendant Brice Current (a Lieutenant with the San Juan County Sheriff's Office) came to Plaintiffs' ranch on the suspicion that Plaintiffs were engaged in cock fighting, a petty misdemeanor.  Salas obtained and executed at least two search warrants to search Plaintiffs' ranch.  (Doc. 31-3).  Plaintiffs contend that the search warrants were based on

knowingly false statements by Ferguson and Feeser. Plaintiffs further contend that Ferguson coerced Plaintiffs into consenting to the euthanization of their poultry by making false statements. During the course of the raid on Plaintiffs' ranch, hundreds of roosters, chicks, hens, and eggs were destroyed.

Neither Suttle nor King was present during the raid of Plaintiffs' ranch. Moreover, King did not have knowledge at the time of the raid on Plaintiffs' ranch that Ferguson or the Task Force had violated anyone's constitutional rights. (Doc. 58-1) at ¶ 11. King also did not direct Salas "or anyone else with regard to the raid at issue in this case." *Id.* at ¶ 12. King further did not have a policy "under which the Task Force would conduct raids related to enforcement of animal cruelty laws." *Id.* at ¶ 6. Finally, King never stated or knowingly implied that Ferguson had the authority to organize law enforcement officials or that law enforcement officials should defer to Ferguson. *Id.* at ¶ 9.

Plaintiffs allege that Defendants violated their Fifth and Fourteenth Amendment rights not to be deprived of property without due process of law, and that Defendants violated their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. Plaintiffs' claims against King necessarily arise from his alleged supervisory position over Ferguson. King now moves for summary judgment on all of Plaintiffs' claims against him, raising the defense of qualified immunity.

C. *Standard of Review*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the

burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). The plaintiff, however, "is not required to show that the very conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003). Once the Court concludes that a right was "clearly established," then it becomes the "defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted). "[T]he court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Whether a defendant's conduct is objectively reasonable is a legal question, but a factual question may arise when there is a dispute regarding the historical facts material to the objectively reasonable issue. *Roska*, 328 F.3d at 1251.

Furthermore, the Tenth Circuit Court of Appeals instructs that

> [i]f the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity. If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact"

> exist and that the defendant "is entitled to judgment as a matter of law." In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

D.  Discussion

    *1.  Whether King Violated Plaintiffs' Constitutional Rights*

The Court assumes for the purpose of this discussion only that Ferguson violated Plaintiffs' constitutional rights. The question, then, is whether King, in a supervisory role, can be held liable for those alleged constitutional violations.

Because Section 1983 does not allow liability under a *respondeat superior* theory, a supervisor can be liable under Section 1983 if he promulgated, created, or implemented a policy that caused the alleged constitutional harm. *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). In other words, a plaintiff must show an affirmative link between the supervisor and the alleged constitutional violation. *Id.* The affirmative link requirement has "three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). The Tenth Circuit explains that a plaintiff must "demonstrate 'that each defendant acted with the constitutionally requisite state of mind' by 'identify[ing] … specific policies over which particular defendants possessed supervisory responsibility[] that violated their clearly established constitutional rights.'" *Id.* at 1249 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). "[A] supervisor's mere knowledge of his subordinate's conduct," is not sufficient to hold a supervisor liable under Section 1983. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). Moreover, the United States Supreme Court in *Ashcroft v. Iqbal* rejected the

6

theory that a supervisor's acquiescence in a subordinate's actions is sufficient to establish a constitutional violation. *See Phillips v. Tiona*, 508 Fed. Appx. 737, 744 (10th Cir. 2013) (citing *Iqbal*, 556 U.S. 662, 677 (2009)).

King argues first that Plaintiffs have not shown that King was actually Ferguson's supervisor. Notwithstanding whether King was Ferguson's supervisor, Plaintiffs have not presented any evidence that King promulgated, created, or implemented "specific" policies or any policies at all which required Ferguson to act in a way which violated Plaintiffs' constitutional rights, namely to lie to law enforcement officials and others during a raid. Moreover, there is no evidence that the Task Force had the authority, through a policy or otherwise, to act in a law enforcement capacity, i.e., to direct law enforcement officials in conducting a raid. To the contrary, the Task Force had the authority to participate in the raids in an advisory capacity while state and local law enforcement entities actually carried out the raids. (Doc. 75) at 5. A reasonable jury could not find that King promulgated, created, or implemented a policy that harmed Plaintiffs.

In addition, although there is evidence that Ferguson was called a "coordinator" primarily "in the context of providing general information and resources," there is no evidence that King directed that Ferguson be trained, reviewed search warrants attributed to Ferguson, directed Ferguson on how to conduct raids, was present at Plaintiff's ranch for the raid, directed the raid on Plaintiffs' ranch, knew that Ferguson allegedly gave knowingly false statements that rendered the search warrants for Plaintiffs' ranch invalid and coerced Plaintiffs into consenting to the destruction of their property, or that he had any reason to believe that Ferguson would lie to law enforcement officials or others at a raid. *See* (Doc. 50) at 11. Under these circumstances, a reasonable jury could not find a causal connection between King's actions and Ferguson's

allegedly untruthful statements, the basis of Plaintiffs' constitutional claims.

Furthermore, to establish supervisory liability Plaintiffs must show that King had the requisite state of mind. The state of mind required for a procedural due process violation is recklessness or gross negligence while the requisite state of mind for a substantive due process violation is one of deliberate indifference.[3] *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013) (Tenth Circuit assumes without deciding that deliberate indifference is state of mind required for substantive due process violation); *Brown v. Montoya,* 662 F.3d 1152, 1170 (10th Cir. 2011) (although Tenth Circuit has not resolved issue of what state of mind is required for procedural due process claim, other circuit courts employ recklessness or gross negligence state of mind). A deliberate indifference state of mind[4] is also utilized with respect to a Fourth Amendment violation.[5] *Dodds*, 614 F.3d at 1204 (cited in *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)). Because King neither directed the raid on Plaintiffs' ranch nor knew or suspected that Ferguson would give false statements in connection with the raid, a reasonable jury could not find that King had the requisite recklessness, gross negligence, or deliberate indifference necessary to support a supervisory liability claim.

---

[3] Because the due process clauses of the Fourteenth and Fifth Amendments are virtually identical, the Court need only cite cases which discuss the state of mind required for Plaintiffs' Fourteenth Amendment due process claims. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) ("The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, and both were designed to protect individual liberties from the same types of government infringement." (citation omitted)).

[4] Deliberate indifference mandates that the official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir. 2003).

[5] In the context of unlawful seizures, the Fourth Amendment, not the Fourteenth Amendment, is the appropriate Amendment to apply up until the time of the seizure. *See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (Fourth Amendment proper amendment to apply when government behavior at issue "lead[s] up to and include[es] an arrest of a citizen previously at liberty…."). Since that is the situation here, the Court examines only the state of mind required for Plaintiffs' Fourth Amendment claim.

Next, Plaintiffs argue that King is liable for their alleged constitutional violations, because he failed to train Ferguson. Where a supervisor's "failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact, the inadequacy of training may serve as the basis for § 1983 liability." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1240 (10th Cir. 1999). To establish a failure to train claim, a plaintiff must show "essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Currier v. Doran,* 242 F.3d 905, 925 (10th Cir. 2001) (internal quotation marks omitted). Here, Plaintiffs provide only a conclusory argument that had King trained Ferguson she would not have violated Plaintiffs' constitutional rights. Such an argument is insufficient to establish supervisory liability. *See Lemmons v. Clymer,* 609 Fed. Appx. 949, 956-57 (10th Cir. 2015) (rejecting similar argument). Additionally, although King was chairman of the Task Force, Plaintiffs have not presented evidence to suggest that King had a duty to provide, or was responsible for providing, due process and Fourth Amendment training to Task Force members whose activities did not include the exercise of law enforcement authority and were limited to offering advice. Hence, a reasonable jury could not find that King acted in a deliberately indifferent manner to the rights of Plaintiffs by not affording due process and Fourth Amendment training to Task Force members, including Ferguson.

In the alternative to supervisory liability, Plaintiffs also contend that King's conduct led to a state-created danger of harm to Plaintiffs. In the Tenth Circuit, "[t]he key to the state-created danger cases ... lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Armijo v. Wagon Mound Public*

9

*Sch.,* 159 F.3d 1253, 1263 (10th Cir.1998) (quoting *Johnson v. Dallas Ind. Sch. Dist.,* 38 F.3d 198, 201 (5th Cir.1994)).  There is no evidence in this case that King, acting in his personal capacity or otherwise, "affirmatively" placed Plaintiffs in harm's way.

In sum, even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have failed to show that a reasonable jury could find King liable under either a supervisory liability theory or a state-created danger theory for Ferguson's alleged violations of Plaintiffs' constitutional rights.

>   *2.  Whether the Law was so Clearly Established that a Reasonable Official Would Know that His Actions Violated Plaintiffs' Constitutional Rights*

Even assuming Plaintiffs meet the first prong of the qualified immunity standard, they still must demonstrate that they meet the second prong of that standard.  Although it is clearly established that a reasonable official would generally understand that a state official cannot search private property without a valid warrant or destroy private property without due process, it is unclear in this case that a reasonable official in King's position as chairman of an advisory task force would understand that what he was doing violated Plaintiffs' Fourth Amendment and due process rights.  As the Court previously found and continues to find, "the undisputed facts demonstrate that the Task Force functioned as a forum for sharing information, not as an independent entity directing law enforcement activities." (Doc. 50) at 13.  Plaintiffs have failed to show "that the leader of an advisory group is responsible for the uses that other independent entities, such as local law enforcement, make of the information disseminated by that group." *Id.* at 13-4.  Moreover, "[t]o impose supervisory liability on any individual or entity acting in an advisory capacity … would be to extend the theory of causation underlying supervisory liability too far." *Id.* at 14 (citing *Dodds*, 614 F.3d at 1198 (supervisory liability raises question "of causation, i.e., whether the supervisor's conduct was a proximate cause of the violation of the

10

plaintiff's constitutional rights."). In addition, Plaintiffs fail to demonstrate that failure to train Ferguson on constitutional law is objectively unreasonable when one considers that Ferguson is a member of an advisory task force not authorized to engage in law enforcement activities. Under these circumstances, a reasonable official in King's position as chairman of the Task Force would not understand that his chairing the Task Force would violate Plaintiffs' constitutional rights. Plaintiffs have failed to show that they meet the second prong of the qualified immunity standard. Consequently, King is entitled to qualified immunity and to summary judgment on Plaintiffs' claims.

   IT IS ORDERED that

   1. Plaintiffs' request for additional discovery is denied;

   2. Defendant Gary King's Motion for Summary Judgment (Doc. 58) is granted;

   3. summary judgment will be entered in favor of King on all of Plaintiffs' claims; and

   4. those claims will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE