IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIO D. MARIN and REYES MARIN,

    Plaintiffs,

vs.                                                         Civ. No. 12-448 KG/KK

HEATHER FERGUSON GREENHOOD,
PATRICIA FEESER NORRIS, D.V.M.,
and MAX SALAS, CRIMINAL AGENT, NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY/NEW MEXICO STATE POLICE,
individually,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Heather Ferguson Greenhood and Patricia Feeser Norris, D.V.M.'s Motion for Summary Judgment on the Grounds of Qualified Immunity (Motion for Summary Judgment), filed on July 12, 2013.  (Doc. 84).  In addition to seeking summary judgment on all of Plaintiffs' claims on the basis of qualified immunity, Defendants Heather Ferguson Greenhood (Ferguson) and Patricia Feeser Norris, D.V.M. (Feeser) (collectively, Task Force Defendants) seek an award of attorney's fees and costs. Plaintiffs responded on November 18, 2013, opposing the Motion for Summary Judgment and moving under Fed. R. Civ. P. 56(d) to conduct additional discovery to counter the factual assertions made by the Task Force Defendants.  (Doc. 98).  The Task Force Defendants replied on January 2, 2014, opposing Plaintiffs' Rule 56(d) motion, and moving to strike the Declaration of D'Renda Lewis (Doc. 98-5) (Lewis Declaration)  and the Affidavit of Marcy Britton (Doc. 98-9) (Britton Affidavit).  (Doc. 105).  The Court notes that the Task Force Defendants also filed an Errata on January 6, 2014.  (Doc. 107).  Having considered the Motion for Summary

Judgment, the accompanying briefing and exhibits, and the Errata, the Court denies Plaintiffs' Rule 56(d) motion to conduct additional discovery, grants the Motion for Summary Judgment, denies as moot the Task Force Defendants' request to strike the Lewis Declaration and the Britton Affidavit, and denies the Task Force Defendants' request for an award of attorney's fees and costs.

A. *Plaintiffs' Rule 56(d) Motion to Conduct Additional Discovery*

The Magistrate Judge already has denied a Rule 56(d) motion filed by Plaintiffs to obtain discovery with respect to this Motion for Summary Judgment. (Doc. 95). Plaintiffs have not convinced the Court that it should overrule the Magistrate Judge's well-reasoned decision. In fact, "Plaintiffs do agree that there is ample evidence to dispute every fact that is actually material to issues involving qualified immunity." (Doc. 98) at 8 n.3. The Court, therefore, denies Plaintiffs' Rule 56(d) motion to conduct additional discovery.

B. *Background*[1]

This is a 42 U.S.C. § 1983 civil rights case arising from the April 2009 search of Plaintiffs' ranch and the seizure and subsequent destruction of hundreds of roosters, hens, chicks, and eggs. In 2007, former Defendant Attorney General Gary King convened the Attorney General's Animal Cruelty Task Force (Task Force) "to engage in lobbying and other efforts aimed at the generation of new animal cruelty laws" and "to facilitate information sharing between state and local law enforcement agencies regarding the implementation of new and existing animal cruelty laws." (Doc. 58-1) at ¶3. The Task Force's purpose further included

---

[1] Unless otherwise noted, these background facts are taken from the Court's previous Memorandum Opinions and Orders granting Defendant Steven Suttle's Motion for Summary Judgment and denying Plaintiffs' motion to reconsider the decision to grant Suttle's Motion for Summary Judgment. (Docs. 50 and 75).

supporting the enforcement of animal fighting laws. (Doc. 87-2). The Task Force, however, "did not have any independent authority to conduct any law enforcement activities." (Doc. 58-1) at ¶ 5.

Although the Task Force had no formal membership or formal titles, Suttle, an Assistant Attorney General, was known as the head of the task force while Ferguson was known as the Task Force's coordinator. (Doc. 58-1) at ¶ 4. Ferguson had no law enforcement training and was not an employee of the Attorney General's Office. (Doc. 58-1) at ¶ 7; (Doc. 87-8) at 2-3. King chaired the Task Force. (Doc. 87-2).

During 2008 and 2009, Ferguson, Feeser, and law enforcement officials went onto several properties to search for signs of illegal animal fighting, and seized animals that appeared to be involved in those activities. On occasion, officials euthanized those animals. On April 29, 2009, Ferguson, Feeser, Defendant Max Salas (a New Mexico State Police criminal agent), and former Defendant Brice Current (a Lieutenant with the San Juan County Sheriff's Office) came to Plaintiffs' ranch on the suspicion that Plaintiffs were engaged in cock fighting, a petty misdemeanor. Salas obtained and executed three search warrants to search Plaintiffs' ranch and seize evidence. Plaintiffs contend that the search warrants were based on knowingly false statements by Ferguson and Feeser. Plaintiffs further contend that Ferguson coerced Plaintiff Reyes Marin into consenting to euthanizing the poultry by knowingly making the following false statements: (1) if Plaintiff Reyes Marin did not consent to euthanizing the poultry, Plaintiffs would have to pay $3.00 a day per bird to board the birds;[2] (2) Plaintiffs would be facing felony charges; and (3) it would be in Plaintiffs' interest to cooperate with law enforcement officials.

---

[2] Ferguson had previously told law enforcement officers that it would cost $6.00 a day per bird to board the poultry. (Doc. 88-1) at ¶ 14.

During the course of the raid on Plaintiffs' ranch, hundreds of roosters, chicks, hens, and eggs were destroyed.

Plaintiffs allege the following Section 1983 claims: (1) Defendants violated Plaintiffs' Fifth and Fourteenth Amendment rights not to be deprived of property without due process of law; and (2) Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. It is undisputed that the Task Force Defendants are state actors for the purpose of Plaintiffs' Section 1983 claims. The Task Force Defendants now move for summary judgment on all of Plaintiffs' claims against them, raising the defense of qualified immunity.

*C. Standard of Review*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). The plaintiff, however, "is not required to show that the very

conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004).

Once the Court concludes that a right was "clearly established," then it becomes the "defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted). "[T]he court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Whether a defendant's conduct is objectively reasonable is a legal question, but a factual question may arise when there is a dispute regarding the historical facts material to the objectively reasonable issue. *Roska*, 328 F.3d at 1251.

D.  Discussion

    1. Qualified Immunity

        a. *The Claim that the Search Warrants were Based on Knowingly False Statements Made by the Task Force Defendants*

The most expedient manner to resolve the qualified immunity issue regarding the claim that the search warrants were based on knowingly false statements made by the Task Force Defendants is first to address the "clearly established" prong of the qualified immunity analysis first. Although it is clearly established that a reasonable law enforcement official would generally understand that a state official cannot search private property without a valid warrant

or destroy private property without due process, it is unclear, in this case, whether a reasonable non-law enforcement official in an advisory position would understand that what he was doing violated Plaintiffs' Fourth Amendment and due process rights. As the Court previously found and continues to find, "the undisputed facts demonstrate that the Task Force functioned as a forum for sharing information, not as an independent entity directing law enforcement activities." (Doc. 50) at 13. Plaintiffs have failed to show that non-law enforcement members of an advisory group are responsible for the uses that local law enforcement officials make of the information disseminated by that group. In other words, a reasonable Task Force member would not be on fair notice or understand that providing information, whether false or otherwise, to a law enforcement official, who has a duty to investigate relevant information prior to obtaining and executing a search warrant, would result in an unlawful search warrant and, thus, violate a plaintiff's constitutional rights. Plaintiffs have, therefore, failed to show that they meet the second prong of the qualified immunity standard with respect to their claim that the search warrants were based on knowingly false information provided by the Task Force Defendants. Consequently, the Task Force Defendants are entitled to qualified immunity and to summary judgment on that claim.

        *b. The Claim that Ferguson Coerced Plaintiff Reyes Marin to Consent to Euthanizing the Poultry by Making Knowingly False Statements*

With regard to this claim, the Court addresses the first prong of the qualified immunity analysis: whether Ferguson violated Plaintiffs' constitutional rights by coercing Plaintiff Reyes Marin to consent to euthanizing the poultry by making knowingly false statements. Plaintiff Mario Marin states in his affidavit that Plaintiff Reyes Marin consented to euthanizing the poultry after Ferguson falsely informed Plaintiff Reyes Marin of the following: (1) if Plaintiff Reyes Marin did not consent to euthanizing the poultry, it would cost Plaintiffs $3.00 a day per

bird to board the birds; (2) Plaintiffs could face felony charges;[3] and (3) judges consider cooperation with law enforcement officials. (Doc. 88-1) at ¶¶ 16, 20-21. The undisputed evidence, however, refutes the alleged falsity of those statements. First, Plaintiffs do not dispute that the Aztec City Code provides that it cost $4.00 a day to board an animal at the Aztec animal shelter, the animal shelter closest to Plaintiffs' ranch. (Doc. 98) at 59; Aztec, NM, City Code § 16-251. Moreover, it is undisputed that the Aztec City Code states that animal owners are responsible for bearing boarding, medical, and maintenance costs of animals impounded at the Aztec animal shelter. Aztec City Code § 5-232. Although Plaintiffs argue that the Aztec animal shelter could not accommodate all the seized poultry, there is no reason to believe that the poultry could not be boarded at other locations for at least the same cost the Aztec animal shelter would charge. Nonetheless, a reasonable jury could not find that consideration of the cost of boarding the poultry to be unlawfully coercive in nature.

Second, it is undisputed that in New Mexico "[i]t is unlawful … for a person to possess any dangerous drug unless such substance has been dispensed to the person either directly by a practitioner or on a prescription." NMSA 1978, § 26-1-16 (E) (2007 Repl. Pamp.). A knowing violation of this provision is a fourth degree felony. NMSA 1978, § 26-1-26(A) (2007 Repl. Pamp.). In this case, law enforcement officials seized phenylbutazone at Plaintiffs' ranch. Plaintiffs do not contest that this is a dangerous drug for which a prescription is mandated. In fact, Plaintiffs contend that they had a prescription for this drug for use on their horses. (Doc.

---

[3] Although Plaintiff Mario Marin states at one point in his affidavit that Ferguson told Plaintiffs that federal charges "would be pending on this case for the steroids which were on the property," Plaintiffs make clear in the Complaint and their response that "the coercion complained of by Plaintiffs … concerned the lie by Defendant Ferguson that Plaintiffs could face felony charges if they did not sign over the animals…." (Doc. 98) at 18. *See also* (Doc. 1) at ¶ 27; (Doc. 98) at 4, 17. The Court, therefore, restricts its discussion to the allegation that Ferguson falsely told Plaintiffs that they would be facing felony charges.

98-6) at ¶ 4. Plaintiffs, however, admit that they did not inform Ferguson or any law enforcement official about the prescription because no one asked them whether they had a prescription for that drug. *Id.* at ¶ 9(a). Since Ferguson was not informed about the presence of a prescription for the phenylbutazone and it is a felony to possess a dangerous drug without a prescription, a reasonable jury could not find that Ferguson falsely stated that Plaintiffs could face felony charges.

Third, a reasonable jury could not find that Ferguson's statement that judges take into consideration an accused person's cooperation with law enforcement officials is categorically false. Finally, there is no evidence that Ferguson's statements caused Plaintiff Reyes Marin to consent to euthanizing the poultry. In other words, there is no evidence that but for Ferguson's above described statements to Plaintiffs, Plaintiff Reyes Marin would not have consented to euthanizing the poultry.

In sum, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could not find that Ferguson knowingly made false statements which coerced Plaintiff Reyes Marin to consent to euthanizing the poultry in violation of Plaintiffs' constitutional rights. Ferguson is, therefore, entitled to qualified immunity and summary judgment on the coercion claim.

*2. The Task Force Defendants' Request to Strike the Lewis Declaration and the Britton Affidavit*

Because the Court's decision to grant the Motion for Summary Judgment does not rely on the Lewis Declaration and the Britton Affidavit, the Court denies, as moot, the Task Defendants' request to strike that Declaration and Affidavit.

*3. The Task Force Defendants' Request for an Award of Attorney's Fees and Costs*

Although the Task Force Defendants have prevailed on their Motion for Summary Judgment, they cite no legal authority in support of their request for an award of attorney's fees and costs. In addition, the Task Force Defendants raise novel issues to which Plaintiffs responded in a manner that was not frivolous. Accordingly, the Court denies the Task Force Defendants' request for an award of attorney's fees and costs.

IT IS ORDERED that

1. Plaintiffs' Rule 56(d) motion to conduct additional discovery is denied;

2. Defendants Heather Ferguson Greenhood and Patricia Feeser Norris, D.V.M.'s Motion for Summary Judgment on the Grounds of Qualified (Doc. 84) is granted;

3. summary judgment will be entered in favor of the Task Force Defendants on all of Plaintiffs' claims;

4. those claims will be dismissed with prejudice;

5. the Task Force Defendants' request to strike the Lewis Declaration and the Britton Affidavit is denied as moot; and

6. the Task Force Defendants' request for an award of attorney's fees and costs is denied.

_____
UNITED STATES DISTRICT JUDGE